Your argument next in Case 13-1010, M&G Polymers v. Tackett. Ms. Ho? Thank you, Mr. Chief Justice, and may it please the Court. A promise of unalterable, cost-free health care benefits should be negotiated at the bargaining table, not imposed at the courthouse. In a series of cases, the Sixth Circuit has required courts to infer from contractual silence a promise of vested benefits. That the — But the — we're dealing with a case where there isn't silence. I mean, it's a matter of construing what the words mean. But, for example, this collective bargaining agreement says that the employees will receive a full company contribution toward the cost of health benefits. That's not silent. Your Honor, respectfully, it is silent with respect to the duration of the full company contribution toward benefits. The word receiving, which I understand, Your Honor, to be focusing on, indicates that the individual has to be retired, in other words, in actually receiving a pension and receiving a benefits. It's not — it's not a durational term. And so — That's what you say, but there was a hearing by the district court. You're recommending we apply ordinary contract principles, no? Yes. There's no disagreement, and the courts of appeals don't disagree that ordinary contract interpretation principles. Assume that I find those words ambiguous. You have a hearing. The district court had a hearing. And it didn't — I don't think the district court relied on a presumption. It relied on a bevy of evidence, including the fact that your company bought the predecessor company, assessing the health contributions at full value for retirees. Why wouldn't ordinary contract principles permit the district court to do exactly what it did here? Justice Sotomayor, I want to go back to the first part of your question, which said, well, wasn't there a trial here? And our position is that it never — it never should have gotten to that, because the district judge initially, as a matter of law, looked at the contract language here, declined to apply yard man, and said, I don't find a promise of vesting. On appeal, the Sixth Circuit said, we disagree. Under yard man, there is at least an inference of vesting here, and instructed the district judge to apply yard man on remand, which the district judge did. And on page 20 of Petitioner's Appendix, in the opinion on remand, the district judge required this Court to reach the conclusion that the plaintiffs here obtained vested benefits. Ms. Ho, I'm wondering if you would agree with this. If we could start all over again. Forget all the history that you just said. If we could start all over again. You, I think, just agreed that we would use ordinary contract principles. Is that right? Correct. Okay. So ordinary contract principles, we would, first, we would look at the agreement, and if the agreement said something clearly, either way, whether it was for vesting or against vesting, the agreement would control. Is that correct? That's correct. And if the agreement was ambiguous, we could take extrinsic evidence to clarify the terms of the agreement. Is that correct? Objective extrinsic evidence, yes. That's correct.  So. You acknowledge that? See, I wouldn't acknowledge that if I were you. Well, Your Honor, I'm, I'm. You don't believe in the parole evidence rule. Objective, objective extrinsic evidence, Your Honor, would be, in other words, admissible, admissible on a finding of ambiguity. But I think it's important, Justice Kagan, if I may, to point out that in the Sixth Circuit, and I think this is one way in which what happened here departs from ordinary contract interpretation, is that in the Sixth Circuit, the inference applies of vesting based either on text or. Yes, I hear you. Or extrinsic, extrinsic evidence. Yes, I hear you. I was not getting you to agree with Yardman and I was not getting you to agree to the Sixth Circuit. Certainly, Your Honor. Yes. But I, I, what, what, what I want to, is you look at the text. If the text says it, either way, you go with the text. If the text doesn't say it either way, it's permissible to look at extrinsic evidence like the practice of the parties and, you know, what you sold this for and things like that. Well, I, I would agree with you up to a point, and I think where, where, where I might part company or maybe add to that discussion would be to say that ordinary contract interpretation does say, I think in McCutcheon this Court referred to that, in Stolt-Nielsen this Court applied the principle that where a contract is silent, courts apply the relevant default principles. In other words, silence, I just want to make clear that silence doesn't always equal ambiguity. And our position is that this is a case where actually the parties are disputing language. It's not really a case where there is silence. I mean, you've come in, and you've given some language that's very good for your side, which is that duration clause. And the other party has come in and focused on the word receiving and focused on the tying arrangement between this and pensions and focused on the surviving spouse clause. So you have, you have some clause, you have some language, they have some language. Well, I think, Your Honor, at a minimum, that's why we're entitled to reversal and a remand if this Court declines to require a clear statement, or as part of ordinary contract interpretation. I think we would, at a minimum, be entitled to have that look at the language without the yard man. Ginsburg. Where does ordinary contract interpretation require a clear statement? Certainly, Your Honor. We think ordinary contract interpretation says where there is silence here, and there is no indication of vesting, there is no indication of how long the full company contribution should last. Where there is silence, as this Court did in McCutcheon, this Court looks to see, well, what are the operative default rules that we assume that if the parties didn't contract around. Ginsburg. You keep saying where there is silence, and as Justice Kagan pointed out and as I pointed out, one side says it's not silent. There are all these indicia that vesting was intended. I think there is silence. There is no question that there is silence in the operative term of the promise, which is a full company contribution toward health care benefits. It's true that the other side has pointed to various textual cues that I think, if anything, Justice Ginsburg, underscore the lack of such terms in the one place in the contract where we would expect it to be. Kennedy. But I thought your position here was that what the contract says under ordinary principles of contract interpretation is not the point. The point is, is that in the first court of appeals case, they mentioned Yardman at least four times and said the Yardman presumption controls, and that's what the district court thought. And the question, the principal question here is whether the Yardman presumption should have a significant, play a significant part in the interpretation of this contract, and you say no. Correct. That would be, and presumably there would be, we could make that decision and remand so that we don't interpret this contract initially without, without the benefit of what the district court and the court of appeals would say without the Yardman presumption if you prevail. Certainly, Your Honor. Unless, of course, the Yardman presumption is normal contract interpretation. That is, you know, the court of appeals could be saying that when you look at the totality of the contract, where the benefits are being given for, as payment for work, you get them if you've worked so many years, they increase when you've worked more years, where that is the case, it is a reasonable assumption, call it a presumption if you like, that any promise to pay those benefits continues after the termination of the, of the union contract. In other words, I'm not sure that the court of appeals would agree that this presumption is contrary to normal contractual interpretation. I think the court of appeals would say that is normal contractual interpretation. Justice Scalia, I think there's, I think you're right that the Sixth Circuit would and has said that all it's doing in these cases is applying ordinary contract interpretation. I think, as Judge Sutton and others have pointed out, saying doesn't make it so. And I think there can be no question when you look at the cases, and I think this case is a good example of the work that Yardman is doing. And Yardman itself, Justice Scalia, in a footnote in its opinion, acknowledges that ordinary contract interpretation rules apply with respect to interpreting the contract generally. But with respect to the issue here, which is the duration of the, of the contract, the Sixth Circuit itself in Yardman said that the normal strictures, was the word used, doesn't apply. So I think at least as an initial matter, the Sixth Circuit did not conceive of this as ordinary contract interpretation, and that it's really its own policy-based rationales for why it's appropriate, in a sense, to put a thumb on the scales here in favor of retiree. But I think if you look at, if you look at the rules, maybe that's the most clear way to see that it's not ordinary, is saying to courts, you can look at text or extrinsic evidence. That's not normal contract interpretation. To say to courts, you, you can ignore a contract duration clause if it doesn't specifically refer to retiree health benefit. Sotomayor Well, we, we know that contracts have certain assumptions about them, about what continues. Arbitration provisions continue after the expiration. We have found that correct? Correct. Correct. In the labor context, that's correct. Yes. And Justice Scalia just said to you, something that talks about retirement and the surviving spouse and her right to get things, would, I think, could reasonably be viewed as a vesting provision. I would respectfully disagree with that, Justice Sotomayor, for two primary reasons. I think the first reason is that all of these other textual cues are reasonably read in conjunction with the contract, both with the contract expiration clause, which, which says that the benefits are for the duration of the agreement. But even without that clause, are read in the context of the background rule to the  Sotomayor You see, that, that, that begs the question for the following reason, okay? I don't know whether there's a lifetime health benefit if this company stops providing any. Meaning, if the company someday says, we're not going to give any whatsoever, the issue, that I think is a more interesting question, because then the contract has truly expired. But if it chooses to, it seems to me that the full benefits or, or will receive a reduced, will receive a full company contribution could suggest that that doesn't expire. So long as the, as the health, as long as the company is providing health insurance. I think our, our position is the full company contribution language, as, as the district judge in this case initially held when looking at that language. Does not have a durational term, and that's not sufficient to imply best thing. In, in this particular case, and I think Your Honor raised the issue of the, the term of, of the agreement and applying during that. In terms of going forwards, and I just want to be clear, we've, we've never sought to terminate the benefits. And, and in fact, now the retiree benefits are the subject of mandatory bargaining and negotiation. Ginsburg's question is, should you have, the collective bargaining agreement has expired, you have your duration clause, and the company, instead of saying retirees, we're going to make you contribute something to the health care, says, bargaining and contract expired, no health coverage at all for retirees. Under your theory, I assume they could do that. Well, under, under ERISA, where Congress said, unlike pension benefits, we're not going to require health care benefits to vest, the only way, the only way to benefit is by contract. Ginsburg's question is, is it your position that once the contract expires, the employer is free to say no health coverage for retirees, period? If there has been no vesting, yes. In, in this case, the company, each successor company and the union entered into a series of agreements that they can bring to the Court. But you answered the question. The answer is yes, right? The company can terminate. You're saying it hasn't terminated here. It's, it's a nice company, but, but it, it doesn't have to be a nice company, does it? Isn't that your position? Our position, I'm just, I'm just trying to be consistent with the record in this case. As, as a general matter, yes. The terms don't outlast, outlast the terms of the agreement. There is a difference in circumstances. What I would like to hear, earlier you said there are two reasons. One was the termination clause, and second, that the contract had to be read in light of the background rule, then you got cut off. And I really want to know what the background rule you were about to refer to was. Certainly, Your Honor. I think there are, there are two background rules in play here. And the first rule is that we don't normally read into silence where parties have undertaken extra statutory obligations or extraordinary undertakings. We don't read those terms into silence. We expect that if such a serious undertaking as a promise of health care benefits were, for life, were to have been made, that we would expect to see it. Just like this Court said in the Tarrant case. Sotomayor, what's the second one, before you get cut off again? What's the second one? Certainly. And I think, I think the second background rule here is related to the first, and that's, that's the extra statutory obligation here, that where Congress has said in ERISA it's explicitly exempted welfare benefits from automatic vesting. So if the, in other words, what's being asked for here is the exception to the rule. So we would expect to see that clear in the contract. Ms. Ho, Congress has said, yes, in pension benefits there's vesting, and in health care benefits we leave it to the parties, is that right? That's correct. So it doesn't have any implication for health care benefits other than we leave it to the parties, isn't that right? I would respectfully, maybe I would not so much disagree as take that a step further. I think, I think it does have an implication here, because it establishes a default rule that unless, as a matter of contract, there is an agreement to vest, then the benefits otherwise do not vest. And I think we would expect, applying normal contract principles, would expect to see that clear on the face of Congress. Well, but then, then you're back to your first background rule, which is like we would expect to see this if it were there. But you can, I mean, that seems, that, that statement has its corollary, right? Which is that, you know, either party, we would expect, we would expect to see if the union had won, that it would say vested. We would expect to see if the employer had won, it would say unvested. And indeed, I think that there's an amicus brief in this case that suggests that there was a survey done of all these agreements, and about 60 percent of them say quite explicitly unvested. Yours doesn't do that. So there we are. We're left with this ambiguity, and you have some language, and they have some language, and some judge has to figure it out. Well, and I think, I think your question raises two issues, one of which goes back to our previous discussion about the role that ERISA has, has to play here. And I think if you put the onus on the employer to say, it's clear, you're in a, you're in a sense saying even though Congress doesn't require it to be vested, we're going  Sotomayor, you said we don't care. Congress has said we leave it to them. Right. But, but there's no obligation to do it. So normally we would expect to see the obligation on the party who wants the benefit to seek the clear language, to seek the promise, as opposed to the party who doesn't. And I think if you sort of play that out in terms of as a practical matter, particularly in the context of negotiations, I think one would also expect to see the party who wants the benefit bargaining for the benefit. So I think Alito This is an important benefit and an expensive one. Why is it that in this, that in this collective bargaining agreement and apparently many others, I don't know whether the figure is 40 percent or whatever it is, there isn't anything explicit one way or the other? I think Alito This certainly can't be something that didn't occur to the employer or to the union. Why did they choose to leave it, why did they choose not to address it expressly? I think there, one could consider that they didn't express it, express it directly, or one could read the contract as saying there simply is no silence, there is no promise of vesting here, because that is an extraordinary obligation for a company to do not. Ginsburg About retirees will receive health benefits as long as they are eligible for and receiving a monthly pension. Doesn't that sound like as long as they are getting the pension, they will get health benefits? Alito No, Your Honor. Again, read in conjunction with either the express clause in this case or the background rule that the terms expire with the agreement, that doesn't indicate that those extend. And I think what the Sixth Circuit has done, and it did in this case, it instructed this Court that the mere fact that the retiree health care benefits were tied to receipt of a pension was sufficient to indicate vesting. I think that essentially undoes what Congress did in saying you have to vest in pension. You don't have to vest in the welfare context. The Sixth Circuit essentially puts those things together. Scalia I don't think it's reversing that. But I think it's an argument of contractual expression, contractual intent. It says if you tie the continuing receipt of health benefits to the continuing receipt of retirement benefits, and if you know that retirement benefits survive the termination of a contract, right, you acknowledge that, it seems to suggest that health benefits continue as long as retirement benefits do. I mean, maybe there are other indications, but that one certainly seems to tie health benefits to retirement benefits. I don't think so, Your Honor, because I think one consequence of that is essentially no matter what the parties contract or agree to, you're always going to have vesting, even though it's the exception and not the rule. Simply by tying the health care benefits to retire to retirement benefits. Ginsburg Why do you have to do that? If you want to treat them as separate, treat them as separate. Don't tie them together. There was nothing that required these two to be tied together. O'Connor Your Honor, I think the practical reason for linking those two is not to indicate vesting, but to ensure that the recipient is actually retired for purposes of receiving the benefits. Kennedy I thought it was your position that whatever might be the outcome of these questions, the Sixth Circuit didn't think that that was the right analysis, that the Sixth Circuit didn't think the result could be reached without imposing the presumption of yardman. And so instructed the district court. That's the issue of the court. O'Connor That's correct, Your Honor. And the district court made clear on remand, and the Sixth Circuit in the second appeal in Tackett 2 explicitly approved, and the word the Sixth Circuit used was presumption. The district court decided correctly in applying the presumption to this case. Ginsburg I thought that the district court on remand said it would have come out the same way anyway. He said there are no facts that would defeat the same conclusion. O'Connor Correct, Your Honor. And I think that's an important response to what Justice Sotomayor was pointing out earlier about the fact that there was a trial here. I think that language makes clear that the trial here was about what vested. And that's the district judge making clear that whatever facts there had been, it would have reached the same conclusion about vesting, which is the only issue before this Court, based on the Sixth Circuit's directive, as Justice Kennedy was pointing out, to apply yardman and to apply the yardman presumption. Scalia You know, the nice thing about a contract case of this sort is you can't feel bad about it. Whoever loses deserves to lose. I mean, this thing is obviously an important feature. Both sides knew it was left unaddressed. So, you know, whoever loses deserves to lose. For casting this upon us when it could have been said very clearly in the contract, such an important feature. So I hope we'll get it right, but, you know, I can't feel bad about it. Breyer The workers who don't discover they've been retired for 5 years and don't have any health benefits might feel a little bad about it. I'm taking sides, but I want to, I mean, what I've listened to sort of drives me to the conclusion where you started, decide these things without any presumption, period. Ordinary contract, go read the contract, where it's ambiguous, judge, ask them for extrinsic evidence if they want to present it, decide it like any other case. I started there. Maybe I've heard something that sort of changed my mind. I often do change it in oral argument, but I haven't yet. And, and, and. Scalia He agrees with you, doesn't he? I mean, you're not going to argue that, are you? No, Your Honor. Scalia So you say just decided, and in this case, I've read an awful lot, that you may well lose. Well, I would say this, Your Honor. There's no disagreement that ordinary contract interpretation principles apply. I think the dispute is over, number one, how the Sixth Circuit applied them in this case, and it used the Yardman presumption, which we disagree with. But I think under, under either sort of, however much clarity is required in these contracts, I think in this case, you only get to a promise of vested benefits by reverse engineering language elsewhere in the agreement that only highlights the lack of it where you would most expect to find it. And that ignores the contract expiration clause here, which makes clear it's a full company contribution during the term of the agreement. And if I may reserve the rest of my time for rebuttal. Roberts Thank you, counsel. Ms. Clark. Clark Mr. Chief Justice, and may it please the Court. As the Court has so aptly noted, this is a contract dispute. And our argument is simply that contract disputes relating to retiree health benefits should be decided like every other dispute under a collective bargaining agreement. To determine what the parties intended without applying any presumptions. Breyer Isn't that just what the others, Justice Scalia, at least, I tend to agree with him. He said the other side is arguing the same thing. And so since both sides want to argue the same thing, maybe we can just agree with them. Clark That's music to my ears, Your Honor. Roberts Well, maybe music, but it, Yardman says that retiree health care benefits are not subject to the stricture of ordinary contract interpretation. And that's what Yardman says. And so I think we would have to vacate if we're going to, say, apply the normal principles of contract interpretation. Sotomayor I have two answers to that. Let me start with what Yardman actually did. If you read the entire opinion, and unfortunately it's rather long, it details a number of contract provisions in that contract, which the Court found supported the intention of both parties to create a benefit that would last beyond the expiration of the collective bargaining agreement. There was, for example, and this is kind of the most obvious contrast, the retiree benefit was described with some words like continues. The benefit for the surviving spouse of a retiree was stated to continue as long as this contract is in effect. Now, the Court took that, rightly so, to suggest that the retiree would have a lifetime benefit, but that a surviving spouse who was still alive after the retiree died would continue to have benefits until the next agreement. I'm sorry, the agreement, because it kept rolling forward in agreements. So the surviving spouse was limited to the term of the contract while the retiree was not. There are a number of other contract provisions that they note which very clearly supported the inference that the retiree's benefit was intended to continue. Roberts. Well, I know you're saying that you win without Yardman, but it still seemed to mean something to the Sixth Circuit. And all the other courts of appeals that have addressed the question have distinguished what they're doing, saying, you know, we're not going to follow Yardman, we're going to apply normal principles of contract interpretation. And, Your Honor, that was where I was getting to the second piece of my argument, or the second piece of my answer to your question. And that is that we believe, particularly based on the limited arguments that were made by Petitioner below, that this Court could affirm this decision on normal principles of contract interpretation. But if the Court wants to be sure that the judgment below is in fact based on normal principles of contract interpretation, we are perfectly comfortable with a remand for that purpose. Sotomayor, the only point of this that I'm unsure of is that almost all of the other circuits require either a clear statement of vesting or at least words clearly susceptible to vesting, one or the other. What do you – how do you stand on those two principles of statutory contract? Number one, I – well, number two, I'm disagreeing with both parts of your – of the premises of your question. Sotomayor, I'm saying what other – I think other courts have done this, correct? Well, I think they have presumptions against vesting, some of the courts. Some may. Skinner Engine is really the only one that flatly says we're going to ask for clear and express language. Even they will consider extrinsic evidence for the purpose of demonstrating an ambiguity. Skinner Engine opinion itself says that it would consider that. It just found the evidence in that case not sufficient. But among the other circuits, I count five that apply traditional rules of contract interpretation and that only say, not clear language, not specific language, but say only we are looking, as in all other contract cases, for some language that is reasonably susceptible to the interpretation that's offered by the retirees. And that's the classic formulation. It's the one that we urge this Court to adopt. And indeed, it's a – Is that the Second and Seventh – are you saying essentially you agree with the position of the Second and Seventh Circuit? The Second Circuit, Justice Ginsburg, in the opinion in Joyce v. Curtis Wright, articulated that precise standard. It then, in a kind of a summary of its opinion, used the word specific language, which has come to be cited to mean something more than language reasonably susceptible. To that extent, we would not agree with the Second Circuit. As far as they went, relying on traditional principles, we agree with them.  If you're dealing with something as big a deal as health care benefits for life, you might expect that to be addressed more specifically? Mr. Chief Justice, no. There are many contract provisions that are a bigger deal than this. I mean, and it is not the traditional rule of contract interpretation that the courts look to see which party had a bigger stake and punish them if their language is ambiguous. Quite the contrary. It's treated like any other issue of contract interpretation. Is the language reasonably susceptible to more than one interpretation? You want us to write an opinion saying that whether or not health care benefits survive the collective bargaining agreement is not a big deal? No, Justice Kennedy, that's not what I'm saying. Well, then I think you – I don't understand your answer to the question posed by the Chief Justice. I'm saying that there are many contract issues that come before the courts that are a big deal. This is one of them, particularly for the retirees. It is a big deal. But the point is simply that traditional rules of contract interpretation don't treat ambiguity any differently when it is in a contract provision that's a big deal for one side or the other or both sides. But that's exactly contrary to what Yardman instructs. Justice Kennedy, I think not. I think that the essence of the Yardman inference, and that's the term that the Court used, is not that different from what this Court recognized in the Nolde brothers' case and in the Litton case, which is that there are some terms in collective bargaining agreements which, by their nature, are offering – maybe, let me rephrase – by their nature may be offering something in exchange for service that's already rendered. So if the performance is complete on one side and all that remains is for the other side to keep its end of the bargain, the Court in Litton and in Nolde recognized that those promises, as a normal rule, will continue. They will not expire when the rest of the agreement expires. And accordingly, the Court, dealing with an issue of severance pay in Nolde, where all that there was in the contract was a promise that there would be severance pay proportional to years of service, said that when the employer closed the plant after the contract expired, that there was a possibility that that severance pay was intended still to be paid to people who had earned it, and therefore ordered arbitration of the dispute. In Litton, the question was whether, when the plant laid off a number of workers after the contract expired, was the employer obligated to arbitrate over the question whether seniority should have protected people in those layoffs. The Court reached the conclusion that there was not the same kind of character of deferred compensation about layoffs, seniority in layoffs, as there was in the notion of a severance pay that people may have earned over time. So the Court was ready, without any explicit language in the contract, without any presumption, to say this is an issue that has to be determined by the processes that are normally applied to determine ambiguous contract promises. Does this promise the contract promises? Or is there a general principle of custom or practice in the industry or something like that, which I guess that's an ordinary principle of contract interpretation that could be applied? Mr. Chief Justice, it certainly is one of the principles that this Court has said must be considered in the case of all collective bargaining agreements. The Transportation Communications Union said practice, usage, and custom should always be considered for interpreting collective bargaining agreements. And we are fully behind that. Scalia, is there a practice on this subject? Yes, there is evidence of a practice on this subject, Justice Scalia. In this case, there are two things. One is the sales agreement, which Justice Sotomayor pointed out during the Petitioner's argument, where. Okay. I'm not talking about in the industry. Okay. In the industry in general, this is rubber industry language. You will see it in many of the reported decisions that come out of the Sixth Circuit because there were a number of rubber companies headquartered in Ohio.  Combined with, and the surviving spouse will receive them until death or remarriage, is a very common formula in these cases. Yes, but the Sixth Circuit, we can't rely on because of yard man. Well, Your Honor, I would say, number one, that those two provisions combined certainly do say a lot about the duration of the promise that the employer was making. The sales agreement here specifically reflected that the credit on the purchase price, which M&G received, was calculated based on actuarial assumptions that these were lifetime benefits with no retiree contribution. This may be an unfair question, but following up on what Justice Scalia is getting at, I don't know how many others of those rubber companies are requiring contributions of active employees that are different than the contributions of retired employees. Do you have any information about that? I do not, and certainly not in this record. So the second point of practice. Please. The second point of practice that I want to point out is this. The 1997 collective bargaining agreement omitted all reference to retiree health benefits for people who had retired before January 1, 1996. So beginning in 97 and in 2000, you have a collective bargaining agreement which says people who retire 1-1-96 and after will receive the following health benefit. The record is undisputed that even though the contract was silent beginning in 1997, the employer continued to pay retiree health care benefits to those people who retired before 1997. And indeed, that liability was transferred from Shell to M&G as part of the sale. That is a point that we made. It's undisputed. Petitioner did not respond to it in any way. So we do have that kind of evidence of what the parties have done under this agreement. And is it right that Petitioner's original arguments were not that they didn't have to pay these at all, but only that these benefits were capped at a certain level? Is that right? That is correct. And indeed, that was the issue that on which the company moved to dismiss the complaint in the first instance. It was the issue on which the district court initially dismissed, finding that there were cap letters that limited the amount that the employer had to pay. That, when it was tried before the district court, the district court rejected all of that evidence on credibility grounds and found that based on the credibility of the witnesses, this was a lifetime obligation which everybody had understood until the employer found a way to try to reduce its costs. And to the question about retirees, I don't know if it's an industry standard or just this contract. Are retirees eligible to vote on the agreements that are entered into by the union? They are not. They are not. And is that generally true of retirees? Generally, that is true because they are not members of the bargaining unit once they retire, and only members of the bargaining unit are represented in bargaining or have any right to vote on the ratification of an agreement. And do they – does the union represent them in any other disputes they may have as retirees with – because generally the union represents employees, active employees? Yes, it does. It is the agent, and that in the statutory term as well as the common law term, for the employees in the bargaining unit. Once an individual retires, the union is no longer his or her agent. The union no longer has any authority nor any obligation to represent the retiree. In a way, you would expect the union to give this away so it can get higher benefits for the people that are still in its bargaining unit, would you? That is one of the concerns. That's a cynical approach. No, that indeed is one of the things that Yardmen points out, is that that is a reason to assume that the parties would want to make this clear in the agreement. And in fact, you know, to be clear, there are agreements in which the union and the employer agree in advance that the retirees will have these benefits until and unless the union and the employer bargain something else. And that's just a different species of contractual vesting. There is a condition. It's imposed at the time of retirement. The benefit is paid consistently with that condition. There are, at the opposite end of the spectrum, agreements, and I tried a case in which this was the understanding, when the retiree went out the door, that package of benefits was exactly what that retiree was going to have for the rest of his or her life, no changes permitted by any means whatsoever. And so the span and the spectrum of contractual vesting in this area is very broad. And our point to you is to say there is no one-size-fits-all solution here. It is what the parties agreed to. And if there is ambiguity in the collective bargaining agreement, as there plainly was here, with provisions that could be read on each side, then it goes to the processes which the common law has established over hundreds, if not thousands, of years to say we're going to consider the entire agreement. We don't compartmentalize some other provisions in the agreement and say, oh, wait a minute, they don't have anything to do with this. If they give a clue about what the parties had in mind with respect to the retiree health benefits, they must be considered. They must all be put into the mix of what the Court will determine. Ginsburg's is one of the ingredients that goes into this mix. The background rule that I thought the Friend would bring up, and that is it is the normal rule in contract interpretation that when the contract expires, so do its terms. If you start with that, contract expires, all its terms expire. Isn't that? This Court addressed that in Litton. And the clear ruling of the Court there was that exceptions to that rule are determined by normal contract interpretation. Well, what about the arbitration context of Litton? I mean, the idea is, well, of course it doesn't expire because you might have disputes, particularly disputes going in connection with the expiration. So the idea in Litton that the arbitration requirements continue really can't be applied outside that context. Certainly, to the extent that Litton says we're going to presume that the arbitration promise continues, that does not apply here. But the second level of consideration in Litton, you know, so the first question was, the Court says arbitration, we're going to presume it continues unless the parties have made it very clear that it doesn't, so that it can kind of clean up all the disputes under the parties, that the parties have. But then the second layer was, is the particular contract provision in dispute here, there the seniority provision that I mentioned a moment ago, the kind of contract provision that we believe may have some post-expiration binding effect on the employer. And the Court contrasted Nolde, in which it was severance pay, noting that that was in the nature of a deferred compensation claim, and also pointed out that if a particular contract right may be deemed to have accrued or vested while the agreement was in effect, it would normally remain in effect. Kagan. So is this the language you're referring to, exceptions are determined by contract interpretation, rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement? That is one of the passages that we're referring to. We're also referring to a passage on page 203 of the Court's opinion, which says a similar duty, i.e., a constraint on the employer after the expiration date, which the sentence before, may arise as well from the express or implied terms of the expired agreement itself, express or implied. Kagan. Sotomayor, could I go back to something that you said earlier that I wasn't sure I understood from reading the briefs? You said that this was a standard form contract that arose in Ohio for rubber companies. Is that right? That's close. I mean, the rubber industry bargained as a group. There were a number and there were patterned bargaining, which is common in a number of industries. You know, one large employer might be the lead company in a round of bargaining. Goodyear was involved, as you know, in the early contracts here. So there's a bargaining with one big employer and it sets a pattern, and then the other companies in the industry bargaining with the same union may adopt that pattern. And that goes for wages and all of the economic terms of the agreement, as well as benefits and working conditions and everything else in the contract. This language about retiree health benefits shows up in a large number of the rubber contracts, and because they were headquartered in Ohio, not to be surprising. And did these contracts arrive before or after Yardman? These, the initial contracts were pre-Yardman. They've obviously been renegotiated. For instance, the 95-point rule in this agreement was post-Yardman. I mean, it was bargained to previously it was somebody with at least 10 years of service gets 100 percent paid, and they made that a little bit less generous for people who were hired after the change was made. They adopted the 95-point rule with, as you know, it's proportional to that for people with less than 95 points in age and service. So it's, the change is gourmet, but the basic pattern of retiree gets these benefits with a full company contribution. The language about the retiree receiving a pension, which in my mind very plainly does speak to duration, as does surviving spouse until death or remarriage. I don't know how you read those words to mean anything other than duration. So there is enough in this contract to support the interpretation that the retiree has a lifetime promise. There are no boundaries placed on it. The Court properly tried the case, received extrinsic evidence, ruled that it was indeed a lifetime promise. If this Court has any doubt whether traditional principles of contract interpretation were applied without presumptions, as I said earlier, we would be willing to welcome a remand for a determination under traditional principles of contract interpretation. If the Court has no further questions, I believe that concludes my argument. Roberts. Thank you, Ms. Clark. Ms. Ho, you have four minutes remaining. Thank you, Mr. Chief Justice. Three points. First, I think at a minimum, we're not hearing a lot here today defending Yardman. I think there can be little serious question that Yardman infected every aspect of the proceedings below. Indeed, it was dispositive. So I think at a minimum, we're entitled to a vacator and remand for ordinary contract principles to be applied. We think that requiring clarity is consistent with those principles. But even as a matter of sort of what Respondent has suggested in terms of reasonably susceptible, the standard that Justice Sotomayor mentions, I think it will be important if this Court remands for consideration of ordinary contract interpretation that it's clear that what the Sixth Circuit has been doing under that banner is anything but, that looking at putting text on a par with extrinsic evidence is not ordinary contract interpretation, that ignoring contract expiration clauses, unless they specifically reference health care benefits, is not ordinary. I'm not sure that's true. I mean, the language of vesting has to be reasonably susceptible from something in the contract. Correct, Your Honor. We absolutely agree with that. And we believe here the full company contribution language, which is the promise at issue, that's the language that the Sixth Circuit looked at. But it's a contract as a whole. In other words, a full company contribution toward health care benefits when read in conjunction with a contract's expiration clause that says for the duration of this agreement. And how about dispels it? We believe that those provisions indicate when the benefits would cease. In other words, until death, until remerit. And if anything, Justice, they highlight the absence of such language in respect to the promise to retirees where ordinary contract interpretation would tell you if a promise were made, that's where it would have been made. Are you saying it does continue as to dispels? I didn't get the point. No, Your Honor. Our point is that the benefits are for the term of the agreement until death or remerit, both events that can happen during the term of the agreement. And in all events, Your Honor, that's not language that the Sixth Circuit looked at or considered in making its determination here that the benefits vested based on the Arbian presumption and inference. So at a minimum, we believe that we're entitled to a vacator in remand for the court of appeals to apply proper principles of contract interpretation in the first instance. If there are no further questions. Thank you, counsel. The case is submitted.